**CITY OF LOUISVILLE, Division of Police, Appellant,**

v.

**Urania H. LAUN, and James R. Yocom, Commissioner of Labor and Custodian of the Special Fund, and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

Feb. 2, 1979.

Discretionary Review Denied May 15, 1979.

Stuart E. Alexander, Asst. Director of Law, Louisville, for appellant.

Harris Berman, Louisville, for Urania H. Laun.

Denis S. Kline, Asst. Counsel, Dept. of Labor, Louisville, for James Yocom.

Kenneth E. Hollis, Gen. Counsel, Dept. of Labor, Frankfort, for Special Fund.

Before VANCE, HOGGE and WHITE, JJ.

HOGGE, Judge.

Urania H. Laun, a fifty-one (51) year old police officer employed by the City of Louisville for over twenty (20) years, was awarded total disability benefits by the Workmen's Compensation Board as the result of a lung problem. Her employer, the Division of Police of the City of Louisville, appeals from the judgment of the Jefferson Circuit Court affirming the Board's opinion and award. The issues raised by the appellant are whether Mrs. Laun's condition is a work-related injury or an occupational disease, whether her claim is barred, and whether the Special Fund should have the principal share of liability for any work-related injury or disease which Mrs. Laun is found to have.

The record in this case indicates that when Urania Laun entered the police force, she was twenty-nine (29) or thirty (30) years of age and in apparent good health. From the time when she graduated from the Police Academy until 1968, she primarily worked out of the Youth Bureau. During Christmas season the police department began assigning Mrs. Laun to a shoplifting detail, which involved going in and out of heated stores into the winter weather, checking for shoplifters. She began experiencing colds and pneumonia during or at the end of these shoplifting details.

Mrs. Laun's doctor, Dr. Van Vooren, discovered she was suffering from bronchiectasis, a dilation of the bronchus. Bronchiectasis is a condition caused by repeated infections, such as bronchitis and pneumonia. The problem was localized and an infected portion of the lung was removed.

In 1968 Officer Laun was promoted to sergeant, and began having some supervisory duties and desk work. She was still involved in the Christmas shoplifting detail, however.

Mrs. Laun's problem had worsened by 1970, and the middle lobe of her right lung was removed. After a recovery period, she returned to work. She was taken off the shoplifting detail and all her work was performed indoors. She was promoted to lieutenant and became night supervisor in the juvenile department. She testified that she was able to perform those duties without major difficulty.

In September 1975 she was involved in policing activities in connection with busing problems. She was then transferred to the Fourth District as a platoon leader. The Fourth District, comprising part of the west end of Louisville, was described as having a smog problem. Mrs. Laun testified that she had to be on the street with the young officers who she supervised. There were break-ins and fires in the area, and warehouses had to be checked and burglar alarms investigated.

At the scenes of fires, the police protected the area until an arson squad could be summoned. This sometimes involved several hours. Smoke inhalation from the fires caused Mrs. Laun to vomit, cough up blood, and become ill with headaches. On one or more occasions, water from a fire hose froze on Mrs. Laun's clothing. Mrs. Laun began to experience lung problems again. She had difficulty breathing and became exhausted easily. On August 1, 1976, she was hospitalized and on August 2, 1976, she filed a workmen's compensation claim.

Evidence from several medical experts was given before the Board. The evidence indicated that bronchiectasis is caused by repeated infections. Dr. Van Vooren, who had treated Mrs. Laun since 1966, stated that chronic exposure had caused Mrs. Laun to have repeated infections. He has advised her to avoid crowds, pollution, and quick temperature changes to protect the tissue left in her lungs. He stated that her condition had deteriorated when she was transferred from desk work with juveniles to that of being a patrol lieutenant. It was his opinion that she was totally and permanently disabled, and that her condition was progressive.

Dr. Ray Bryant, a thoracic surgeon, found that Mrs. Laun had bilateral bronchiectasis, and could not do any strenuous work, such as the work of a police lieutenant. Dr. Bryant stated that the medical probability was that Mrs. Laun's condition was related to her work, in which she was exposed to respiratory irritants more than the general public.

Dr. William Anderson did not believe that the bronchiectasis was a natural incident of the employment. He states that the most frequent cause of bronchiectasis is a defect in the musculature of the air ways, which is something with which people are born. However, the condition could be aggravated by smoke from fires and certain types of fumes from air pollution, and by going at regular intervals from warm stores into cold weather. Dr. Anderson believes that while Mrs. Laun could not perform strenuous duties, she could do desk work, although she would have difficulty and discomfort if there was cigarette smoking in the area.

At the conclusion of the taking of evidence, the Board concluded that Mrs. Laun was one hundred percent (100%) permanently disabled as a result of her injury. The Special Fund was dismissed as a party.

The first issue presented by the appellant concerns the Board's finding that Officer Laun sustained a work-related injury. The appellant contends that bronchiectasis is not an injury as defined by KRS 342.620(1). In KRS 342.620(1), injury is defined as follows:

(1) "Injury" means any work related harmful change in the human organism, including damage to or loss of a prosthetic appliance, *but does not include any communicable disease unless the risk of contracting such disease is increased by the nature of the employment. "Injury" when used generally, unless the context indicates otherwise, shall include an occupational disease.* (Emphasis added.)

Appellant states that Mrs. Laun's disease is the result of repeated respiratory infections such as colds, flu, and pneumonia, all of which are communicable diseases, and that it has not been shown that the nature of her employment increased the risk of contracting such disease. We cannot agree with this contention. We believe that the record contains ample evidence that Mrs. Laun was subjected to extremes of temperature, smoke, and smog beyond that experienced by the average member of the public. The frequent contact with respiratory irritants was caused by the nature of her employment. It required exposure to smoke and the outside elements well beyond that encountered in the usual errands and travel to and from work. In spite of appellant's arguments to the contrary, we are compelled to conclude, as did the Board, that the principles in *Haycraft v. Corhart Refractories Company*, Ky., 544 S.W.2d 222 (1976), are quite applicable to this case.

We are not disturbed by the fact that the Board found that the injury occurred August 2, 1976, although no particular incident occurred at that time other than Mrs. Laun's hospitalization due to the deterioration of her condition. "[C]ausation need not be localized in a single event. It is enough that the disability be fairly traceable, wholly or in part, to the work." *Haycraft, supra,* at 224; *Hudson v. Owens*, Ky., 439 S.W.2d 565, 569 (1969).

We hold that the Board did not err in finding that the claimant suffered a work-related injury within the meaning of KRS 342.620(1), and we believe that this injury was in the nature of an occupational disease.

The next issue for our consideration is whether Mrs. Laun's claim is barred by late filing. Appellant notes that Mrs. Laun developed bronchiectasis prior to 1970, and that by 1970 it was necessary that part of her lung be removed. She returned to work in a protected environment—desk work indoors. Appellant contends that manifest, overt partial disability existed more than two years prior to the filing of the claim in October, 1976.

The statute of limitations on filing of claims for disability resulting from an occupational disease is KRS 342.316. The relevant portion reads as follows:

The right to compensation under this chapter for disability resulting from an occupational disease shall be forever barred unless a claim is filed with the Workmen's Compensation Board within three years after the last injurious exposure to the occupational hazard or after the employe first experiences a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he has contracted the disease, *whichever shall last occur* . . . . (Emphasis added.)

The date of Mrs. Laun's last injurious exposure was in 1976. It was during that year that she became occupationally disabled to perform the work which she had been assigned to do, and filed her claim. We note that there can be no claim or cause of action before the occurrence of a disability, *Crawford v. V. & C. Coal Company*, Ky., 432 S.W.2d 403 (1968), and that in *Yocom v. Karst*, Ky., 528 S.W.2d 697 (1975), the Supreme Court of Kentucky held that so long as a workman continues in full-time employment by the same employer, he cannot be considered to be disabled as far as an occupational disease is concerned. We hold that Mrs. Laun's claim, which was filed almost immediately after she found it necessary to terminate her employment, was not barred.

The final issue for our consideration is whether the Special Fund should have a share of any liability for Mrs. Laun's condition. The appellant contends that the Special Fund should not have been dismissed as a party and cites KRS 342.120 and KRS 342.316(13)(a). We believe that KRS 342.-316(13)(a), which would require the Special Fund to bear part of the liability for Mrs. Laun's claim, is applicable in this case, for the reason that the record clearly shows that Mrs. Laun had an occupational disease which developed to the point of disablement only after an exposure of five or more years. We therefore hold that the Workmen's Compensation Board erred in dismissing the Special Fund as a party.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.