**Jewell WIARD, Appellant,**

**v.**

**KEN–WEL, INC., and Special Fund of Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

Oct. 20, 1967.

Max M. Smith, Chancellor & Darnell, Frankfort, for appellant.

C. W. Swinford, Stoll, Kennon & Park, Lexington, Paul Rehm, Versailles, for appellees.

EDWARD P. HILL, Judge.

This appeal is from a judgment upholding an order of the Workmen's Compensation Board denying appellant's claim for total permanent disability. She was, however, awarded temporary total disability and her medical expenses, with respect to which there is no controversy.

In appellant's brief under "Questions Presented," the following argument is relied upon for a reversal of the judgment:

"The Workmen's Compensation Board and the Franklin Circuit Court erred in not awarding appellant total and permanent disability award where undisputed facts clearly proved that appellant was required to give up her only employment for health reasons brought about solely by her employment and suffers from permanent chemical changes in her body, impairing her health and is limited medically to the type of future employment she may obtain, and because of her age and limited education is unable to find

employment and is therefore for all practical purposes removed from the economic market."

Before pursuing this question further, let us look into the facts. Appellant, a widow, is fifty-five years of age. She has worked for appellee for twelve years, the last five of which were spent as a solderer on an assembly line engaged in the manufacture of ignition transformers for the oil burning industry. She was required to solder lead wire that goes into condensers.

Appellant claims to have experienced her first manifestation of pain or distress during September 1965. She complained of shortness of breath and chest pains. She was off from work with this condition part of September and October. She returned to work on October 12, 1965, but became ill at her work station and was hospitalized. Her doctor diagnosed her illness as acute pulmonary edema (excessive fluid on the lungs). She again returned to work on October 25, 1965, but within a week thereafter she again became ill with the same symptoms. Doctors Howard and Cowherd treated her, and they testified in her behalf in the proceeding before the Board.

■ Appellee offered no evidence. Therefore, we must look to appellant's evidence to determine whether or not the evidence was so forceful and convincing as to require the Workmen's Compensation Board to accept her version of the case and award her total permanent disability. This court will not substitute its judgment for that of the Workmen's Compensation Board or reverse its orders, decisions, or awards unless they are clearly erroneous on the basis of reliable probative and material evidence contained in the whole record. KRS 342.285(3) (c) and (d). Also, where the evidence is not clear cut and convincing, the Board had the right to find that the injury did not arise out of and in the course of the employee's employment and its findings could not be overturned by the courts. Cf. Columbus Mining Company v. Childers, Ky., 265 S.W.2d 443. This court

has continued to follow the rule in Childers, supra, in many later cases. See Lee v. International Harvester Co., Ky., 373 S.W.2d 418; Savage v. Claussner Hosiery Company, Ky., 379 S.W.2d 473; Miller v. Olin Mathieson Chemical Corporation, Ky., 398 S.W.2d 472; Shaw v. Sippi Products, Ky., 411 S.W.2d 926, and Graves v. Merit Laundry and Dry Cleaning Company, Ky., 416 S.W.2d 736.

■ Appellant's evidence, without contradiction, shows she is not totally and permanently disabled. Dr. Howard was asked the following question and answered thus:

"Q. With this idea in mind and based upon your findings do you have any opinion as to whether or not Mrs. Wiard has sustained any loss of ability to obtain work as a result of these factors?

"A. Certainly at Ken Wel she has. I don't think that this is a permanent disability at all, she has had. I think it is a very temporary thing but I do think it ought to keep her from going back to Ken Wel but not keep her from any other position—let me take that back—there are many other positions or jobs she can perform."

Dr. Howard stated that appellant was allergic to the "fumes" or conditions that existed at her place of employment with Ken-Wel; that she was also allergic to "several things," such as penicillin, codeine, and the mycin drugs; that he also had appellant's history from another doctor, who reported she was allergic to "penicillin, all myecin (sic) drugs, aspirin, codeine, sulfa, Pentothal, Darvon and novocain." Dr. Howard went on to state: "Yes, I think her general makeup is such—some people are allergic to most anything and have a tendency to be allergic to a lot of things. I think Mrs. Wiard is one of those and that has nothing to do with employment or what she comes around or what. Some people are more prone to have allergies than others and she apparently is one of these." He stated ap-

pellant had three separate attacks of pneumonia previous to the illness she complained of in this case.

The sum and substance of the testimony of Dr. Howard is that appellant is not totally and permanently disabled but only disabled, in his opinion, from performing the work she customarily did at Ken-Wel due to the presence of "fumes" or to the inherent atmospheric conditions in that particular plant. Such "fumes" or the condition of the air at Ken-Wel did not affect other employees; only appellant was affected due to the chemical make-up of her system, the cause of which he could not explain.

The evidence of Dr. Cowherd, Dr. Howard's partner, was substantially the same as that of Dr. Howard.

■ Without question, disability from the inhalation of noxious gases is compensable and has been since the 1924 amendment to the Workmen's Compensation Act. See T. M. Crutcher Dental Depot v. Miller, 251 Ky. 201, 64 S.W.2d 466. Incidentally, appellant relies upon Crutcher and other similar cases, such as: Harlan Colleries v. Arthur Smith, Ky., 396 S.W.2d 67; Good v. Russell Fork Coal Co., Ky., 387 S.W.2d 842; and Royal Jellico Coal Co. v. Cunningham, Ky., 411 S.W.2d 928.

It is noted that in Crutcher, the claimant had a total permanent disability which the Board found to have been caused by inhaling gases. In the present case appellant's medical testimony, as noted above, shows she has recovered from her illness caused from inhaling "fumes."

■ Cunningham, supra, involved a hip injury to a coal miner who had worked in the mines for thirty-five years. This court upheld the award of the Board finding Cunningham disabled to perform work in his "former occupational classification." Smith, supra, was a silicosis case but rested on the same rule of law as Cunningham.

Appellant argues that due to her uncontradicted medical evidence advising against her returning to her former work and her age and limited education she comes within the rule in Cunningham and Miller, supra.

We observe a vast difference between the "occupational classification" of a coal miner and a person engaged to do a particular item of work in a factory. In the former, the first qualification of a coal miner is a strong back and a fearless disregard for dark, damp underground hazards, such as rock and slate falls, rock dust, danger of electrocution, injuries from machinery and from delayed explosions. It is a specialized occupation with knowledge of hazards and pitfalls handed down from generation to generation.

On the other hand, the occupation of appellant involved the doing of one particular piece of work, requiring only a short period of training with little or no previous skill or experience. She could just as easily have been trained to do another "item" of work in which no "fumes" were present. Or she may have obtained other employment requiring no more training or experience than was necessary for the performance of her work with appellee. In fact, there was testimony she was offered other work by appellee, which she declined.

To summarize, the appellant has no permanent disability to do ordinary work which she is capable of doing. She is merely unable to tolerate the atmospheric conditions of the particular work she was performing at the time of her illness. These conditions did not affect any of the other persons working along side of appellant. Her difficulty was, and is, in her sensitivity to the "fumes" or atmospheric conditions at her work station. Her system is allergic to the impurities of the usual air conditions at her work place. In fact, her system is allergic to many other things. This is unfortunate but noncompensable under our statute and case law.

Our recent case, McDonald v. Goodwin Brothers, Ky., 379 S.W.2d 54 (1964), is identical to the present case. McDonald,

age sixty-five with a seventh-grade education, was an automobile mechanic who suffered from exposure to plastic filler dust in automobile body work. This court said in McDonald that claimant failed to sustain his burden of proof that the use of plastic filler is so widespread as to preclude his employment opportunities and that he (McDonald) "is able to do work which is available for him to do."

Shaw v. Sippi, Ky., 411 S.W.2d 926, is indistinguishable from the present case. The facts in Shaw are similar in that Shaw claimed "contact dermatitis" due to handling clay products containing chemicals. Compensation was denied in Shaw.

The judgment is affirmed.

All concur.